# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| KELLY HANNING,<br><br>            Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>            Defendant. | NO. C10-2037-TSZ-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Kelly Hanning, proceeding *pro se*[1], appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

---

[1] Plaintiff was represented by Charles Cottrell and the Office of Robert Friedman through the Administrative Hearing. AR at 28, 85-86. Plaintiff filed the appeal *pro se*. Dkt. 3. After filing her opening brief, plaintiff requested the Court to appoint counsel to represent her. Dkt. 15. The motion was denied, but plaintiff was advised that there were many attorneys who might agree to represent her on a contingent fee basis, and that if she wanted an extension of time to find counsel, she should notify the Court. Dkt. 17. Plaintiff did not take further steps to engage counsel.

REPORT AND RECOMMENDATION - 1

# I. FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 39 year-old transgender female with a high school degree and some college education. Administrative Record ("AR") at 20, 42. Her past work experience includes employment in the mechanical maintenance field. AR at 20. Plaintiff has not engaged in substantial gainful activity since January 21, 2007, the alleged onset date. AR at 13.

On December 29, 2007, plaintiff filed a claim for SSI payments, and on January 15, 2008, she filed an application for DIB. AR at 11. Plaintiff asserts that she is disabled due to personality disorder, biplolar disorder, not otherwise specified, and substance abuse in reported, sustained remission. AR at 13.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 11. Plaintiff requested a hearing which took place on March 29, 2010. AR at 28-72. On April 30, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 11-22. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

# II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

# III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Hanning bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments

are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On April 30, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since January 21, 2007, the alleged onset date.

3. The claimant has the following sever impairments: personality disorder; bipolar disorder, not otherwise specified; and substance abuse, in reported, sustained remission.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to occasional interaction with the public and co-workers.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1970 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 21, 2007, through the date of this decision.

AR at 13-21.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ properly evaluate the medical evidence?

2. Did the ALJ properly evaluate the GAF scores?

3. Did the ALJ err at Step 5 by concluding there were jobs in the national economy that plaintiff could perform?

Dkt. 16 at 1,3, 4, 5, and 6.

## VII. DISCUSSION

A. <u>The ALJ Found Plaintiff to be Less than Credible</u>

The ALJ found plaintiff to be less than fully credible, based on the findings that the plaintiff's complaints were not consistent with the medical evidence, plaintiff's lack of compliance with medical directives, reported progress in connecting with small groups and reports of improvement, stopping work for reasons not related to the allegedly disabling impairments, continued use of alcohol and drugs, and daily activities, including attending college, sculpting and travelling that are inconsistent with the level of impairment claimed by plaintiff. AR at 17-18. No error has been assigned to the adverse credibility determination, and substantial evidence supports the finding by the ALJ.

REPORT AND RECOMMENDATION - 6

B. <u>The ALJ Did Not Err in His Evaluation of the Medical Evidence</u>

Plaintiff argues that the ALJ erred by discounting the medical opinions of Victoria McDuffee and Shauntae Willis in favor of that prepared by Leslie Postovoit. Dkt. 16, issues 1 and 2. In addition, plaintiff argues that the ALJ failed to take into account her GAF scores.

*1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

REPORT AND RECOMMENDATION - 7

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. *Victoria McDuffee, Ph.D.*

Dr. McDuffee is a clinical psychologist who examined plaintiff in November 2009. AR 523-31. Dr. McDuffee opined that plaintiff suffered severe depression, anger and irritability, and observed those symptoms herself, and also noted plaintiff suffered severe social isolation as reported by plaintiff. AR at 525. She diagnosed bipolar disorder, NOS, and assigned a Global Assessment of Functioning ("GAF")[4] of 35. AR at 526. She found severe

---

[4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." *Id.*

REPORT AND RECOMMENDATION - 8

functional limitations in the areas of ability to relate appropriately to co-workers and supervisors, ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and ability to maintain appropriate behavior in a work setting. She diagnosed plaintiff with marked limitations in her ability to exercise judgment and make decisions and her ability to interact appropriately in public contacts. *Id.* Dr. McDuffee diagnosed plaintiff as only mildly limited in her ability to perform routine tasks, "as evidenced by her participation in school, with treatment and complying with medication regimen. She recalled 3/3 objects. Completed Serial 7s without error." *Id.*

The ALJ gave divided weight to Dr. McDuffee's opinions. He concluded:

> In social factors, the claimant was severely limited due to a history of problems working close to others and maintaining appropriate behavior/tolerating the pressures and expectations of a normal work setting; she was markedly limited in interacting with the public because of her unstable emotions. Dr. McDuffee observed that the claimant was self-medicating her moods during her last period of employment, resulting in termination. Her emotions were deemed "unstable" and she had problems managing them. The prescribed medications would not interfere with the claimant's daily functioning.
>
> I give significant weight to the portion of her opinion that found the claimant capable of simple and complex instructions and learning new tasks because this is supported by the record and the State assessments. However, I give little weight to the remainder of the opinion finding marked to severe limitations. Although I recognize some limitations relating to the claimant's mental impairments, I do not find the evidence supportive of limitations beyond moderate, which is consistent with the State. Without objective evidence validating these limits, I presume Dr. McDuffee relied mostly on the claimant's self reports.

AR at 19. The ALJ then cited to reports from Drs. Postovoit and Flanagan, as discussed below, for discounting the severity of her mental health impairments.

### 3. *Shauntae Willis*

Plaintiff was seen by Shauntae Willis, a licensed mental health therapist in 2008 and 2009. On November 16, 2009, Ms. Willis prepared a Washington Department of Social and

Health Services Psychological Evaluation assessment. AR at 517-522. She also reported severe depressed mood, marked manic mood, and marked hallucination psychosis. She diagnosed plaintiff as bipolar with psychotic features and assigned a GAF score of 48. AR at 519. She opined that plaintiff had severe limitations in her ability to understand, remember and follow complex instructions and her ability to interact appropriately in public contacts, and marked limitations in her ability to understand, remember and follow simple instructions, learn new tasks, and her ability to relate appropriately to co-workers and supervisors. AR at 520.

Ms. Willis is not considered an acceptable medical source under the Social Security Regulations. However, in order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").[5] If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

The ALJ gave "little" weight to Ms. Willis' assessments.

---

[5] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

> Although Ms. Willis is familiar with the claimant's treatment, most of her assessment describes the claimant's subjective complaints, as evidenced by the lack of objective or detailed information to substantiate the conclusions. These findings are further inconsistent with the State assessments, discussed below, which found the claimant capable of completing simple and complex tasks. Also, Ms. Willis is not considered an acceptable medical source under the Social Security Administration regulations, lending less weight to this opinion. Nonetheless, some of the limitations are consistent with the record and the State findings concerning interactions with others and these have been recognized in the residual functional capacity assessment.

AR at 19.

### 4. Leslie Postovoit, Ph.D.

Dr. Postovoit was a reviewing physician with the Washington State Department of Disability Determination Service. She issued a report dated March 10, 2008. AR at 384-401. Dr. Postovoit found that plaintiff had moderate limitations in her ability to appropriately deal with the general public, accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She found plaintiff "not significantly limited" in all other respects. AR at 385. Dr. Postovoit recounted plaintiff's medical history, and then noted:

> While the clmt has received tx w/ rx for Bipolar D/O in the past, MER suggests on/off compliance and is not clear that the clmt has a significant mood sx (sleeplessness, very heightened/depressed moods, for example) in the absence of DA&A. The clmt's primary dx appears to be Borderline Personality D/O, w/ the clmt showing some issues concerning identity/roles in life, impulsiveness, making suicidal threats as a way to entreat compassion/attention when emotionally in pain, self-mutilation to reduce emotional pain, mood-reactivity, problems w/ being alone, etc. She has been hospitalized briefly on several occasions in the past few months due to heightening her emotional lability and sense of desperation. MER shows the clmt repeatedly as more calm after receiving brief counsel and refraining from DA&A. She was to participate in longer-term DA&A tx. From a MSE standpoint, the clmt's CP&P and adaptive skills are fully intact. She is bright and shows cognitive flexibility and adequate problem-solving. Emotionally, however, the clmt is more fragile. She has been [clean and sober] per her report for several weeks now and is calmer and more goal-oriented vs. reacting to the emotional crisis du jour. She stated that she had refrained from cocaine and opiates for a while now, but had continued drinking, at least through 2/08. When [clean and sober], the clmt can manage work similar to her work at the Pacific Science Center.

> A/B: Perform simple and complex tasks adequately. The clmt shows
> consistently good cognitive skills and focus on non-emotional (such as work
> product) tasks.
>
> C/D: Manage best in settings that do not require her to interact w/ the public or
> w/ other employees on a prolonged, more intimate basis….

AR at 386. Dr. Postovoit's findings were affirmed by Rita Flanagan, Ph.D. on December 4, 2008. AR at 492.

### 5. *GAF Scores*

Plaintiff also argues that the ALJ's assessment of the medical evidence is not consistent with the medical assessments. At various times, plaintiff was assessed with a GAF score of 20, 30, 28, 20 and 40 (AR at 358, 431, 373, 426, and 364). However, all of these scores appear to have been assessed after plaintiff's return to non-sobriety. Accordingly, they do not reflect plaintiff's GAF when she is, in fact, clean and sober. Thus, these scores do not discount Dr. Postovoit's assessment that when clean and sober, plaintiff could manage work similar to that which she performed at the Pacific Science Center.

### 6. *Conclusion on the ALJ's Treatment of the Medical Evidence*

As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When weighing the medical opinions, the ALJ is to follow the medical hierarchy set forth in Section 1 above. Here, the ALJ did not give controlling weight to the opinion of the examining physician Dr. McDuffee. However, the ALJ provided specific and legitimate reasons supported by the record for preferring the opinions of the State DDS physicians. First, plaintiff was found to be lacking credibility. Second, as the ALJ noted, there was an absence of supporting medical evidence to sustain Dr. McDuffee's findings, and instead, the ALJ reasoned, the opinion must have been largely based on non-credible self-reporting. Third, plaintiff engaged in daily activities, including attendance at college classes. Achieving a 3.5 grade point average, travelling and sculpting, which were inconsistent with the social

limitations found by Dr. McDuffee. Finally, evidence that plaintiff's difficulties were largely attributed to her alcohol and drug abuse support the findings of Dr. Postovoit.

Similarly, there was no error in the ALJ's evaluation of Ms. Willis' assessments. As noted, she is not considered to be an acceptable medical source for Social Security purposes, so the ALJ was required to provide reasons germane to Ms. Willis' opinions as a basis for rejection. He did so. First, Ms. Willis' assessment of plaintiff's cognitive ability to handle simple and complex tasks was against the medical opinions of all physicians who have assessed plaintiff. Plaintiff did not lack cognitive abilities as demonstrated by her college-class attendance and achievements. The described level of emotional and social impairment was properly discounted for the same reasons set forth above regarding the opinion of Dr. McDuffee.

The role of this Court is limited. As noted above, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.* It is possible to interpret the evidence in the manner suggested by the plaintiff. However, it is not possible to conclude that this is the only rational interpretation of the medical evidence. The ALJ did not err in his review and interpretation of the medical evidence.

### C. The ALJ Did Not Err at Step 5

Plaintiff also argues that the ALJ erred at Step 5 by finding plaintiff could perform the jobs of being a cleaner/housekeeper. AR at 21; Dkt. 16 at 5. Plaintiff argues in her brief that she underwent back surgery in September and has restricted mobility. Dkt. 16 at 6. It is not clear what year the plaintiff is referring to as the impairments found do not include back impairments, and evidence of back surgery are not included in the record. Accordingly, the Court can only conclude that this surgery occurred after the time frame in this record and this appeal. Although this may be the basis for a new application, the record does not support a

REPORT AND RECOMMENDATION - 13

finding of disability based on a back impairment. Accordingly, there was no error in making this finding.

Plaintiff also argues that this could involve too much contact with other persons. The RFC found by the ALJ restricted plaintiff only occasional interaction with the public and co-workers. AR at 16. This RFC limitation is supported by the record, in light of plaintiff's abilities to attend college classes and attend support therapy groups. The ALJ did not err in finding that plaintiff could perform as a cleaner/housekeeper.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED, and the complaint be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 31st day of August, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge